United States Courts
Southern District of Texas
FILED

APR 02 2015

David J. Bradley, Clerk of Court

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| KAREN KRISTINE SILVIO | § | CASE NO. 14-36744 |
| | § | CHAPTER 13 |
| DEBTOR | § | |

| | | |
|---|---|---|
| KAREN KRISTINE SILVIO | § | |
| PLAINTIFF | § | |
| vs | § | ADVERSARY PROCEEDING |
| NATURAL AND LEGAL PERSONS | § | NO. _____ |
| ACTING AS A SKIP TRACING CO. | § | |
| COLLECTION AGENCY AND/OR | § | |
| REPOSSESSION AGENCY AND | § | |
| DOING BUSINESS AS "NATIONAL | § | |
| RECOVERY"  ET AL. | § | |
| | § | |
| DEFENDANT'S | § | |

## COMPLAINT OBJECTING TO ENFORCEMENT OF SETTLEMENT AGREEMENT, ATTORNEY'S FEES FOR A DAY OF MEDIATION AND ATTORNEY'S LIEN

**COMES NOW,** Plaintiff, Karen Silvio, and files this Complaint Objecting to Enforcement of Settlement Agreement, Attorney's Fees for a Day of Mediation, and Attorney's Lien, pursuant to Tex. R. Civ. P. 11.  As further proof thereof Plaintiff would respectfully show unto the Court the following:

### I. JURISDICTION AND VENUE

The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334 and venue is proper pursuant to 28 U.S. C. § 1409.

## II. IDENTITY OF PARTIES

1.  Debtor/Plaintiff, Karen Silvio

2.  Defendant, Natural and Legal Persons, Acting as a Skip Tracing Company, Collection Agency and/or Repossession Agency and Doing Business as National Recovery et al.

## III. FACTUAL BACKGROUND

3.  One or more National Recovery agents and/or employees in connection with, upon information and belief, attempts to collect a consumer debt and/or assist in repossession of alleged collateral for an alleged consumer debt violated consumer protection law.

4.  On March 18, 2010, Craig Colon, employee of National Recovery, physically assaulted Plaintiff, while in the course and scope of his employment for Defendant National Recovery.

5.  Mr. Colon, with at least nineteen prior felony convictions, in Harris County alone, many of the majority of them for assault and terroristic threats; Defendant, National Recovery, failed to conduct an adequate background check, negligently hired, retained, trained and supervised Mr. Colon.  Even a cursory background check would have revealed that Mr. Colon had a long and violent criminal record, still Defendant placed him in a very volatile situation where he was highly likely to encounter Plaintiff and others of the public in stressful, tense situations wherein his propensity for violence was highly likely to injure a member of the public.

5.  This act of violence by Mr. Colon was part of his criminal record prior to his employment, during and after he was employed by Defendant.  After Mr. Colon terminated his employment with Defendant he was re-hired in spite of the fact that

his criminal acts were on-going.  It was only after Mr. Colon's assault upon Plaintiff that Defendant terminated him.

6.   Defendant, National Recovery, owed Plaintiff, and all other members of the public, a duty to hire, supervise, train, and/or retain competent employees pursuant to *Civ. P. & Rem. Code Title 5 101.022*.   The job for which Defendant hired Mr. Colon carried a foreseeable risk that a criminal conduct would occur and that Mr. Colon would be entering the property of the public in furtherance of his employment.   Defendant breached this duty by hiring Mr. Colon, a person Defendant, either knew or should have known, was highly likely to assault plaintiff, and/or others, he came into contact with, during the course and scope of his employment with defendant, based upon his numerous past criminal convictions. Defendant's breach proximately caused plaintiff severe physical and emotional injury.

### IV. OBJECTING TO ENFORCEMENT OF SETTLEMENT AGREEMENT

7.   November 14, 2014, all parties participated in mediation.  Plaintiff arrived at the mediation in pain, due to injuries sustained in the attack, and took her medication that impaired her ability to make important decisions.  Plaintiff lacked the capacity to fully understand the contract or settlement agreement and its terms at the time of the contract's signing.  Plaintiff did not read the agreement nor was the agreement read or explained to her.  Plaintiff did not consider the deal or the settlement agreement to be final. The Mediator nor any of the Attorney's present read or went over any kind of rules about mediation that should be followed and no one informed Plaintiff that this agreement would be final.  Plaintiff has attended mediation before, however, Plaintiff has never signed any settlement agreements

to know if they are final or may be rescinded within a certain amount of days, etc. There is nothing in this settlement agreement that states it is final or may not be rescinded.

Especially since under paragraph 6 of page 1 it states:  Drafts of any **_"further settlement documents "_**shall be prepared and delivered by Mr. Fahl to the other parties on or before the 19th day of November, 2014.  The parties agree to cooperate with each other in the drafting and execution of **_"such additional documents"_** as are reasonably requested "**_to implement the terms and spirit of this agreement. "_**  Hence, the terms of this agreement are lacking by admittance. When an agreement fails to include all necessary terms, the negotiations of the parties "never reached that final stage of meeting of minds upon all matters which is essentially necessary to an agreed judgment." *Wyss,* 235 S.W. at 569.

Under paragraph 7 page 1 states:  If one or more disputes arise with regard to the **_"wording of the settlement,"_** the parties agree to attempt to resolve same by phone conference with the mediator who facilitated this settlement.

*Texas Family Code Sec. 153.0071. Alternative Dispute Resolution Procedures. (a) On written agreement of the parties, the court may refer a suit affecting the parent-child relationship to arbitration.  The agreement must state whether the arbitration is binding or non-binding.*

*Texas Family Code § 6.602. MEDIATION PROCEDURES.*

*(b) A mediated settlement agreement is binding on the parties if the agreement:*
*(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;*

In review of the settlement agreement Plaintiff does not find anywhere in the contents of the contract that it is written *"that the agreement is not subject to*

*revocation."*  At the very bottom of the contract, someone has added ***"Additional Terms"*** which basically includes disposing of Plaintiff's due process rights of a jury trial which Plaintiff has already requested and paid for.  Plaintiff would have never agreed to such.  Nor would plaintiff agree to allowing another to waive her rights of confidentiality as is noted in the middle of page 2.

As a matter of fact Plaintiff only finds where there intended to be "drafts of further settlement documents," references made as "such additional documents," or "changes of the wording of the settlement," and/or "Additional Terms."  There must have been some kind of, "verbal agreement" made or to be made or anticipated, without Plaintiff's knowledge, perhaps when all parties, *except Plaintiff*, but including the one gentleman whose name, credentials and purpose is being withheld from Plaintiff, met in the office assigned to Defendant's, behind closed doors. As a matter of "fact" the only persons that were not in the office was the Receptionist and Plaintiff.

Therefore this contract was indefinite as to the "final terms" that were never actually agreed upon, and while there may have been discussions to *some* elements of the contract, no one considered the deal or the contract to be final. A verbal contract is not official or final because it was not put in writing.

8.    This settlement agreement should be unenforceable and therefore considered null and void as the "Additional Terms" throughout the contract violates Plaintiff's Constitutional Rights.  These "Additional Terms" were added to this contract and Plaintiff does not know if they were added prior to her signature or after.

9.   There is also a mistake in the settlement statement in paragraph 11: *"Each party hereto has been advised by the Mediator that the Mediator is not the attorney for any party, that each party should have this agreement reviewed by that party's attorney prior to executing same, and acknowledge that the Mediator has not given any advice or made any recommendations concerning this settlement agreement or the terms hereof."* However, according to Plaintiff's Attorney, Isabel de la Riva, this is not a true statement of the facts. **See Exhibit 1.** This form is titled Mediator's Proposal.   According to Plaintiff's Attorney, the Mediator was the person that decided on the amount to be awarded.  *Texas Family Code § 6.602. Mediation Procedures: Sec. 154.023. Mediation.* (a) Mediation is a forum in which an impartial person, the mediator, facilitates communication between parties to promote reconciliation, settlement, or understanding among them.  (b). A mediator may not impose his own judgment on the issues for that of the parties.

10.   This settlement agreement is grossly unfair and severely unbalanced in value for Plaintiff.  Paragraph 5 of page 1 states:  *This mutual release runs to the benefit of all attorneys, agents, employees, officers, directors, shareholders and partners of the parties; except: N/A.*  Perhaps this N/A was meant to have Plaintiff's name inserted as she is the only one that did not benefit from this settlement agreement.  Plaintiff would not even have the ability to put an end to her pain and suffering as a result of the amount offered.  Defendant and their Attorney's greatly benefited and Plaintiff, the only injured party, was not even taken into consideration.  This contract was unconscionable.

11.   Are there grounds for Estoppel as an affirmative defense since Defendants apparently agreed to the settlement with the intention of initiating

further settlement documents on November 19, 2014, or agreed to some other future changes to the agreement and is anticipating a breach of contract suit?

12.     Considering the fact that there are obvious changes made to this contract, admitted to by Glen Fahl, Attorney for Defendant, whereby there were no initials to be made to show in good faith that the changes were made prior to Plaintiff's signature, the fact that there was a man allowed to participate in full in the mediation without Plaintiff's permission, there were obvious verbal agreements made to make further changes to this settlement agreement that Plaintiff is not privy to, every person met behind closed doors with the intent to exclude Plaintiff and an attempt to dispose of Plaintiff's constitutional rights of due process, Plaintiff feels that she has been deceived and Defendants, along with her Attorney's, misrepresented themselves in order to procure the contract that proves to be unconscionable.

## V. ATTORNEY'S FEES FOR A DAY OF MEDIATION

13.   At the risk of being repetitive, Plaintiff request that the statement at the bottom of page 2 states: "……………………………If there is a refusal for any reason by any party to abide by "this agreement"………………………". It is obvious throughout the entire two (2) pages that this Settlement Agreement was indefinite.  The verbiage used throughout proves that the final terms were never actually agreed upon.  While there may have been agreements in some areas there was obviously *"Drafts of any further settlement documents shall be prepared and delivered to Mr. Fahl on or before the 19th of November, 2014."*  At the very least it was open to further drafts.  It goes on to add: *"The parties agree to cooperate with each other*

*in the drafting and execution of such additional documents as are reasonably requested to "implement" the terms and spirit of this agreement."*

*The definition of "implement" is: to carry out; put into action; perform: to implement a plan. To complete, satisfy, or fulfil.*

*The definition of "final" is:    absolute, binding, complete, conclusive, definitive, , last. Not to be changed or reconsidered; unalterable.*

One is the exact opposite of the other.  Nowhere does it state that *"this settlement agreement is not subject to revocation"* or *"this settlement agreement is binding or final."* Perhaps the deadline date for its finality was November 19, 2014, however, Plaintiff rescinded, first by phone, at 6:44 p.m., Friday, November 14, 2014, then by email, at 6:48 p.m. on November 14, 2014.  **See Exhibit 2 - emails.** Plaintiff then kept calling on November 14, 2014 at 6:57 pm, 7:00 pm at Mediators office, and 9:37 pm to Attorney, then resumed on November 15, 2014 at 10:50 am, 10:55 am, and 7:49 pm, and November 16, 2014 at 7:54 a.m., November 17, 2014 at 1:20 pm and 1:23 pm and found that her Attorney had a family emergency. Plaintiff received a call from her Attorney on November 18, 2014 at 3:27 p.m. Therefore, she rescinded within hours of signing.  Since the contract was not final and meant to continue as it states and does not reflect this as being final when the final terms and agreement was to be completed by November 19, 2014.  Likewise, to further confirm that this was not the final agreement I have a recorded conversation with my Attorney, Isabel de la Riva, she stated: ***"They have sent me a release and it's the last thing you need to sign in order to write the check.  I'm going to forward that to you now and it's in my professional opinion that you should sign that release and get paid.  I will forward by mail and by email so you***

***can get it right away.***"   Plaintiff never received such document via mail or email. Therefore, the answer to Plaintiff's questions under paragraph 11, regarding grounds for Estoppel as an affirmative defense, would be yes.   As a result of Defendant signing the agreement to the settlement with the intention of initiating further settlement documents or agreed to some other future changes to the agreement and is now anticipating a breach of contract suit against Plaintiff.

## VI. ATTORNEY'S LIEN

14.   Plaintiff's Attorney threatened Plaintiff with a Lien that has not yet been filed of record.  Plaintiff's Attorney, Isabel de la Riva, has stated that there was no discovery conducted, during their two month representation of Plaintiff, as a result of the Courts order that no additional discovery was allowed.  However, that was not the case.   For two months, as per their request, Plaintiff sent over all information and/or documentation pertaining to her Dr., her medical expenses, her income (or the lack thereof due to injury) and hours of conversation, regarding same, only to find that nothing had ever been requested from the necessary places in order to use as evidence in her trial.   Not even her medical records, from her Neurosurgeon, that reflects in detail the two or possibly three surgeries that is required to relieve Plaintiff of her pain.

Plaintiff satisfied every request made to her by her Attorney or her Attorney's Assistant's.  Plaintiff was the one that provided all medical records from Crime Victims and other Hospital Records or Dr's reports.  Plaintiff was not aware until the last several days that her medical records from her Neurosurgeon had never been requested, by any of her Attorney's, although she has provided them with his information, and even though she has been seeing him for the past two years.

To Plaintiff's knowledge there was never a complaint or any kind of harsh words between them. Plaintiff showed her appreciation of them in emails as well as doing as she was told with expedience. Plaintiff is not sure what happened, but whatever it was, happened at mediation. With only two months on the job, no discovery whatsoever and leading Plaintiff into an agreement that would never even come close to giving Plaintiff the opportunity of having surgery's, that would release Plaintiff from her pain and suffering, Plaintiff does not feel that she should be rewarded $26,000.00.

## VII. ARGUMENTS AND AUTHORITIES

15.    The MSA is a contract and is therefore governed by the same rules of construction applicable to all contracts. See Doe v. Tex. Ass'n of Sch. Bds., Inc., 283 S.W.3d 451, 458 (Tex. App.-Fort Worth 2009, pet. denied). Thus, in construing the MSA, our primary concern is ascertaining the true intent of the parties as expressed in the agreement. Id. (citing NP Anderson Cotton Exch., L.P. v. Potter, 230 S.W.3d 457, 463 (Tex. App.-Fort Worth 2007, no pet.)); see Republic Nat'l Bank of Dallas v. Nat'l Bankers Life Ins. Co., 427 S.W.2d 76, 79-80 (Tex. Civ. App.-Dallas 1968, writ ref'd n.r.e.) (Noting that courts should not consider the "intention which the parties may have had, but failed to express in the instrument"). "Words in a contract must carry their ordinary, generally accepted meanings unless the contract itself shows that the terms have been used in a technical or different sense. In construing a contract, we may not rewrite it nor add to its language." Doe, 283 S.W.3d at 458 (citation omitted). The interpretation of an unambiguous contract is a matter of law to be determined by the trial court. Gulf Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 423 (Tex. 2000).

Rule 11 provides that "[n]o agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the Papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. Brian argues that because the agreement is not reflected in the

reporter's record, it does not comply with Rule 11. However, under similar facts, the Texas Supreme Court held in City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 677 (Tex. 1979), that Rule 11 "is satisfied if the oral waiver or agreement made in open court is described in the judgment or an order of the court." Here, the final decree recites that the parties agreed in open court to submit the attorney's fees issue to the trial court. Therefore, Rule 11 was satisfied. See id.

**"The law of contracts applies to Rule 11 settlement agreements."** Ronin v. Lerner, 7 S.W.3d 883, 886 (Tex. App.-Houston [1st Dist.] 1999, no pet.). "Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the *terms* of the offer, (3*) meeting of the minds,* (4) *each party's consent to the terms*, and (5) execution and delivery of the contract *with the intent* that it be mutual and binding." Williams v. Unifund CCR Partners Assignee of Citibank, 264 S.W.3d 231, 236 (Tex. App.-Houston [1st Dist.] 2008, no pet.) (emphasis added). Because of the second element, "[w]here an offer prescribes the time and manner of acceptance, those terms must ordinarily be complied with to create a contract." Padilla, 907 S.W.2d at 460 (citing Town of Lindsay v. Cooke County Elec. Coop. Ass'n, 502 S.W.2d 117, 118 (Tex. 1973)).

Under Texas Rule of Civil Procedure 11, no agreement between the attorneys or parties to a suit is enforceable unless it is in writing, signed, and filed with the papers as part of the record, or unless it is made in open court and entered of record. See Tex. R. Civ. P. 11.[6]  A <u>settlement agreement must comply with Rule 11</u> to be enforceable.  See Padilla v. LaFrance, 907 S.W.2d 454, 460 (Tex. 1995).

To satisfy the "in writing" component of Rule 11, the contract principles that are used in determining whether a "writing" satisfies the <u>statute of frauds</u> apply equally to Rule 11 agreements. See id. Thus, "there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." Id. (quoting Cohen v. McCutchin, 565 S.W.2d 230, 232 (Tex. 1978)).        The written

by written memorandum filed with the clerk." Id. at 857. The trial court's words "must clearly indicate the intent to render judgment at the time the words are expressed." Id. at 858. A trial court's approval of a settlement does not necessarily constitute rendition of judgment. Id.; Buffalo Bag Co. v. Joachim, 704 S.W.2d 482, 484 (Tex. App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.).

*Tex. R. Civ. P. 11* requires that an agreement be in writing and filed in court or that the terms of the agreement be announced in open court and entered of record for the agreement to be a valid basis for a consent judgment. Kelley v. Pirtle, 826 S.W.2d 653 (Tex. App.-Texarkana 1992, writ denied). *"[T]here should be left nothing for adjustment between the parties relating to the subject matter [sic] of the agreement. Until all the terms of a final judgment have been definitely agreed upon by all parties . . . the court [is] without power to render a judgment by agreement."* Matthews v. Looney, 132 Tex. 313, 123 S.W.2d 871, 873 (1939). The issue of whether a Rule 11 settlement agreement fails for lack of an essential term is a question of law. Ronin v. Lerner, 7 S.W.3d 883, 888 (Tex. App.-Houston [1st Dist.] 1999, no pet.). Consent must exist at the time the court undertakes to make the agreement the judgment of the court. Quintero v. Jim Walter Homes, Inc., 654 S.W.2d 442 (Tex. 1983). A party has the right to revoke consent to an agreement to settle the issue in dispute at any time before the rendition of judgment, but not after rendition. Arriaga v. Cavazos, 880 S.W.2d 830 (Tex. App.-San Antonio 1994, no writ). It is improper for a trial court to enter a consent judgment, and it will be set aside if the trial court has knowledge that a party does not consent or has information that is reasonably calculated to prompt a court to make further inquiry into the party's consent. Quintero, 654 S.W.2d 442. The court rendering an agreed

judgment must do so "in strict or literal compliance with that agreement." Vickrey v. Am. Youth Camps, Inc., 532 S.W.2d 292 (Tex. 1976).

### PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Debtor, Karen Kristine Silvio, request her Bankruptcy Court take all matters, as stated above, into consideration, for her protection, at the time of its decision.

Respectfully submitted,

/s/  Karen Kristine Silvio
KAREN KRISTINE SILVIO
PRO SE
23106 NAPLES DRIVE
SPRING, TEXAS  77373
TEL.  (281) 825-2851
FAX (888) 830-9036

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

In Re:                                    §
                                          §
KAREN KRISTINE SILVIO                      §          CASE NO. 14-36744
                                          §          CHAPTER 13
DEBTOR                                     §

## <u>ORDER</u>

On this the 2ⁿᵈ day of April 2015, came for consideration before the Honorable Court, Debtor, Karen Kristine Silvio's Complaint Objecting to Enforcement of Settlement Agreement, Attorney's Fees for a Day of Mediation, and Attorney's Lien, and after careful consideration found the following:

The Court finds Debtor's Motion to be in good standing and therefore, ORDERS that this cause of action for her Motion to be GRANTED.

SIGNED this the _____day of _____, 2015.

_____
Judge Presiding

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Response to Motion for Relief from Stay was served on the parties listed below, at the addresses indicated via electronic delivery on April 2, 2015.

| | |
|---|---|
| Chapter 13 Trustee: | Debtor's Attorney |
| William Heitkamp | Eloise A. Guzman |
| Office of Chapter 13 Trustee | Guzman Law Firm |
| 9821 Katy Freeway, Suite 590 | 8225 Gulf Freeway |
| Houston, Texas  77024 | Houston, Texas  77017 |
| 713-722-1200 | 713-378-9900 |
| 713-722-1211 Fax | 713-378-9977 Fax |
| | |
| United States Trustee | Fahl & Associates, P.C. |
| 515 Rusk Ave., Suite 351 | Glenn J. Fahl |
| Houston, Texas  77002 | 3900 Essex Lane, Suite 330 |
| 713-718-4650 | Houston, Texas  77027 |
| | 713-627-7800 |
| | 713-627-7804 Fax |

/s/Karen Kristine Silvio
**KAREN KRISTINE SILVIO**

Page **1** of **1**

# MEDIATOR'S PROPOSAL

TO SETTLE CASE: $65,000 paid to Plaintiff

YES _____

NO _____

SIGNATURE: _____

Exh 3

## SILVIO

**From:** "Karen Silvio" <kristysilvio@yahoo.com>

**To:** "FERNANDO de la Riva" <fdelariva@delarivalaw.com>

Fernando: Please call me it is Friday night at 6 48 and I can't go thru with this settlement - I have gone thru 4 years of bad pain and was attacked by a career criminal - I am walking away with less then 59000 that will not get me anywhere near a hospital or Dr  The pain is too much to keep going - this criminal and the company that hired him has gotten more respect from the Courts then the person he beat up  Please stop this agreement

Kristy Silvio
281-825-2851 cell
888-830-9036 fax

## SILVIO

**From:** "Karen Silvio" <kristysilvio@yahoo.com>

**To:** "FERNANDO de la Riva" <fdelariva@delarivalaw.com>

Fernando please call me I need to get in touch with Isabel I cannot go thru with this mediation settlement. I cannot get any surgical relief from this settlement. I will have to take it to trial but I cannot do this. Please call me asap. I am sorry but I should have not done this - I didn't understand what I would be left with.  Please please help me!"

Kristy Silvio
281-825-2851 cell
888-830-9036 fax

## Re: SILVIO

**From:** "Karen Silvio" <kristysilvio@yahoo.com>

**To:** 'Fernando de la Riva' <fdelariva@delarivalaw.com>

No I am not going to continue with that agreement at all - I'm sorry - I did not understand it - I should not have agreed to it - I had taken medication when I got there and probably should not have - but I am not going to continue with the agreement - I'm sorry -

Kristy Silvio
281-825-2851 cell
888-830-9036 fax

On Saturday, November 15, 2014 5 27 PM, Fernando de la Riva <fdelariva@delarivalaw.com> wrote

Ms. Silvio.

Good Afternoon. We will call you on Monday. We did very well yesterday. Please relax

Sent from my iPhone

On Nov 15, 2014, at 10:55 AM, "Karen Silvio" <kristysilvio@yahoo.com> wrote:

Fernando please call me I need to get in touch with Isabel I cannot go thru with this mediation settlement  I cannot get any surgical relief from this settlement  I will have to take it to trial but I cannot do this   Please call me asap  I am sorry but I should have not done this - I didn't understand what I would be left with   Please please help me !!!

## SILVIO

**From:** "Karen Silvio" <kristysilvio@yahoo.com>

**To:** "FERNANDO de la Riva" <fdelariva@delarivalaw.com>

Fernando. I am requesting that you or the law firm, to please file a motion or send a notice or call whomever to rescind this agreement. I attempted to call everyone I could including Judge Kennedy only an hour and 1/2 yesterday beginning at 6:30 - I left there at 5:00. When I got there yesterday I took a pain pill because I was already hurting from the hour and 1/2 drive already. I knew I would not be able to lay down and I knew that I would have to be there all day so I went ahead and took something. Maybe I should not have but why would it be acceptable with ya that I not even receive the amount needed for surgery? I said I did not understand it to be that way and did not know that until after I had already signed the first paper. Please rescind this agreement as quickly as possible

Kristy Silvio
281-825-2851 cell
888-830-9036 fax

# SILVIO

**From:** "Karen Silvio" <kristysilvio@yahoo.com>

**To:** "FERNANDO de la Riva" <fdelariva@delarivalaw.com>

Good Morning Fernando.

Please inform Isabel, Rueben and Monica that I have not and will not be changing my mind where this settlement agreement is concerned.

Please rescind based on the fact that upon arrival at the mediation I took medication that impaired my ability to understand the terms of the settlement. I was not mentally competent. The reason I took the medication was the 1 1/2 hours of driving and/or sitting in traffic - my sciatica nerve problem from my back was causing me a lot of pain

The amount agreed upon is so one-sided in favor of the Attorneys which were the ones in the control seat. Shortly after the negotiations began I was no longer even apart of it all. I was told only after the offer was made and there were so many games I could not understand the arrival of the amounts. I was left out of negotiating my own settlement after 4 years of being in pain. This amount is such that it prevents me from being able to even receive medical attention. Everyone seems to be benefiting at my expense. Thanks, but no thanks for offering up Ben Taub Hospital as a resort. Given the agreement I had been in my right mind I would have never ever agreed to an amount that left me totally unable to be restored

How is it that you would think that my case is so weak up against a company that hired a criminal in a volatile position and has left me in this state for a period of 4 years and thinks they have no negligence? Seriously? This man has a rap sheet as long as your arm, he is an alcoholic, he has beat up a cop and I am the 3rd woman he beat up, he has stolen, driven without a license, driven while intoxicated and the list goes on and on and on. With a history like this and lets not forget that he worked for this company for 10 years. He committed these offenses before he was hired during his employment then he quit and was arrested some more and then they hired him again!!!!!!!!!!!!! Yet I was pressured to settle for less then $9000 which does not even get me to the Dr ? No way.

I have called and sent emails since Friday at 6 30 and the only return email I received said "We will call you on Monday. We did very well yesterday. Please relax." Yes you did do very well. A total of $26 000 00 for 2 months of work is not too shabby. One would think that this amount would have at least afforded me a return telephone call instead I was left to continue in my pain and suffering and anxiety of not ever getting better

I had sent Fernando an email prior to the mediation requesting to come in and meet with you all and to go over what information and/or

documentation that you have obtained that strengthened my case even more.  For instance  I sent Fernando all of the records from the Texas Licensing and Regulations - hopefully he ordered the open records on this man and this company.  It will prove he had no license and that the truck he was driving was not even registered to be used in any connection with this company.  I think I also read that it did not obtain the proper insurance either.  The fact that he was working with as many offenses against him puts the company at risk with the laws of the State of Texas.  All of this will come from this one source.  I also wanted to know what was sent to my Dr. or said or what information was obtained from him.  Now that I know that I need to have my tax returns filed in order to be compensated for lost wages then I will be working on that as well.  I would still like to come in and go over all this so we can be prepared for trial.

Again please resend this agreement and if I need to go before Judge Schaffer then I don't have a problem with that at all.  If I need to have a blood test to prove the pill in my system I can do that too.  I don't normally take this medication but I had not replenished the bottle in my purse with advil so I took a pain pill which was all I had with me .

Thank you.

Kristy Silvio
281-825-2851 cell
888-830-9036 fax